UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-12000-RGS

PENSCO TRUST COMPANY CUSTODIAN FBO
RICHARD J. FAGAN, IRA ACCOUNT #20004179 and
PENSCO TRUST COMPANY CUSTODIAN FBO
JAMES P. TIERNAN, IRA ACCOUNT #20000750

v.

CONSTANT S. POHOLEK JR., ESQ.

FINDINGS OF FACT, RULINGS OF LAW,
AND ORDER AFTER A BENCH TRIAL

May 11, 2022

STEARNS, D.J.

A three-day bench trial was convened on October 19-21, 2021, to consider the following issues: whether defendant Constant S. Poholek Jr., a lawyer, abused the bankruptcy process and committed unfair or deceptive business acts by filing a Chapter 13 petition on behalf of his client, Karen Merritt, thereby triggering an automatic stay preventing plaintiffs from foreclosing on Merritt's property; and whether plaintiffs abused the legal process by filing this lawsuit in retaliation for Poholek's refusal to be deposed in unrelated litigation.  Based on the credible testimony and exhibits offered at trial, as well as the parties' stipulations, the court makes the following findings and rulings.

## FINDINGS OF FACT

### *The Parties*

1.      Plaintiffs PENSCO Trust Company Custodian FBO Richard J. Fagan, IRA, and PENSCO Trust Company Custodian FBO James P. Tiernan, IRA are two self-directed individual retirement accounts (IRAs) under the control of Richard J. Fagan and James P. Tiernan.

2.      Defendant Constant S. Poholek Jr. is a licensed Massachusetts attorney who concentrates in bankruptcy law; personal injury law; wills, trusts, and estates; estate probate; family law; and divorce.

### *The Loan Transactions*

3.      On September 17, 2010, Karen Merritt and her former husband, James Michael Cronan, executed loan transactions with plaintiffs comprising two promissory notes and two mortgages.  The mortgages encumbered 7 Brayton Woods Drive, Rehoboth, Massachusetts (the Rehoboth Property) and 91 Oak Street, Norton, Massachusetts (the Norton Property).  Exs. 4-7.

4.      At the time, Merritt was the owner of the Rehoboth Property and the Norton Property.  Ex. 13 at 15-16.

5.      Both notes had a maturation date of September 17, 2011.  The notes required repayment no later than March 31, 2012.  Exs. 4-5.

6.     The notes matured in 2011 with no payment having been made. Day 1 Tr. at 37.

### The Attempted Foreclosure

7.     On September 11, 2017, plaintiffs – through their foreclosure attorney, Luke Travis – served a default notice on Merritt at the Rehoboth Property, demanding $872,734.74 in payment.  Ex. 18.

8.     On April 20, 2018, plaintiffs sent Merritt notice of a foreclosure auction at the Rehoboth Property.  The foreclosure was scheduled for May 17, 2018.  Ex. 20.

9.     On May 14, 2018, three days before the scheduled auction, Cronan met with Poholek at his law office seeking bankruptcy counsel for Merritt.  Day 3 Tr. at 9-10.

10.    In 2009 and 2010, Poholek had filed a Chapter 11 bankruptcy petition on behalf of Cronan's business entities, Classic Display Incorporated and Cronan Realty, LLC.  Day 1 Tr. at 74; Day 3 Tr. at 9-10.  After Poholek's representation in the bankruptcy proceedings concluded, Poholek and Cronan did not have any contact again until May 14, 2018.  Day 1 Tr. at 74; Day 3 Tr. at 10.

11.    Poholek was not the first attorney Cronan sought out to discuss representation for Merritt.  Day 1 Tr. at 89.

12.     Cronan informed Poholek of the impending auction of the Rehoboth Property and provided Poholek with the notes and mortgages associated with Merritt's indebtedness.  Day 1 Tr. 1 at 76-78.

13.     Poholek testified that, on an initial review, he believed the notes to be usurious.  Day 1 Tr. at 118.

14.     Cronan arranged a telephone call between Poholek and Merritt to discuss Poholek's possible engagement.  Day 1 Tr. at 78.  After Merritt agreed to hire Poholek, he prepared a fee agreement, which he forwarded to Merritt.  Day 3 Tr. at 16.  The agreement provided for a $4,000 fee, $1,000 to be paid in advance, $2,000 to be paid under the Chapter 13 plan, and a final $1,000 to be paid at the Rule 341 Creditors Meeting.  *Id.* at 16-17.

15.     Poholek received the $1,000 advance from Cronan's company MRC Displays and Fixtures, Inc., but no further payments were made by Cronan or Merritt.  Day 2 Tr. at 80-82; Day 3 Tr. at 17.

### *The Chapter 13 Petition*

16.     Poholek, assisted by his paralegal Rebecca Prizio, collected the information from Merritt necessary to file a bankruptcy petition.  Day 3 Tr. at 12-13.

17.     Merritt faxed Poholek copies of her driver's license and social security card.  Day 1 Tr. at 113, 120.[1]

18.     With the information provided by Cronan and Merritt in hand, Poholek decided on a strategy for Merritt's bankruptcy proceedings, which he described as follows.

> The strategy was to basically formulate a Chapter 13 filing with an adversary component where I explained to her that she would have to file Chapter 13 bankruptcy, and we could structure a reorganization plan in which she could challenge the mortgage or the note as far as what the amount was owed.  Because when I looked at the notes, I saw there was some issues regarding the amount of money on the notes that was owed as far as the interest that was being charged.  And I said, at this point, my recommendation to you is that we file a Chapter 13 plan with a component of an adversary proceeding that you would have to hire an outside counsel for that.

Day 3 Tr. at 13-14.

19.     Poholek had concerns that Merritt would not be able to generate a confirmable Chapter 13 repayment plan.  Day 1 Tr. at 85-87.  He considered recommending that she file a Chapter 7 petition, but ultimately decided that because there was "quite a bit of equity" in the Rehoboth Property, it was in

---

[1] Merritt's driver's license identified her residence as the Rehoboth Property.  Day 3 Tr. at 22.  Although Merritt apparently lives in Mexico for extended periods, including during the bankruptcy proceedings, Poholek was under the impression that Merritt was a Massachusetts resident.  Day 3 Tr. at 22; Ex. 25 at 2.

Merritt's interest to attempt to protect that equity through a Chapter 13 filing.  Day 3 Tr. at 15.  Poholek believed that Merritt could convert her Chapter 13 bankruptcy into a Chapter 7 liquidation if it became clear during the proceedings that a confirmable Chapter 13 plan was out of reach.  Day 2 Tr. at 128; Day 3 Tr. at 15-16.

20.    Because of the looming foreclosure sale, Poholek prepared and filed a "skeleton" Chapter 13 petition on Merritt's behalf on May 16, 2018.[2] Day 2 Tr. at 127; Day 3 Tr. at 19.  The petition did not include any bankruptcy schedules or a proposed Plan of Reorganization.  Day 3 Tr. at 21.

21.    Prizio entered the data to prepare the petition through a software program called "Best Case."  Day 3 Tr. at 20.

22.    The petition triggered an automatic stay of the foreclosure.  Thus, the foreclosure sale of the Rehoboth Property did not occur on May 17, 2018, as scheduled.  Day 3 Tr. at 70.

**The Reorganization Plan and Bankruptcy Schedules**

23.    After Poholek filed the petition, Merritt's Rule 341 meeting was scheduled for June 22, 2018.  Ex. 12 at 2.

---

[2] A skeleton petition is a minimal emergency filing consisting only of basic information.

24.   Prizio then took on the task of preparing Merritt's bankruptcy schedules, while Poholek focused on Merritt's Chapter 13 reorganization plan.  Day 3 Tr. at 28.

25.   On June 11, 2018, Poholek filed Merritt's bankruptcy schedules and reorganization plan with the Bankruptcy Court.  Exs. 2-3.

26.   The bankruptcy schedules contained multiple errors.   For instance, Poholek did not check any of the boxes – "Disputed," "Unliquidated," or "Contingent" – regarding Merritt's indebtedness to plaintiffs.  Ex. 3 at 11.[3]  Further, the schedules listed Merritt's total liabilities as $1.793 million, a number exceeding Chapter 13 limits.  Ex. 3 at 1; Day 3 Tr. at 31.  This error resulted because the "Best Case" computer program used by Poholek and Prizio double counted Merritt's claimed indebtedness of $851,000.  Ex. 3 at 11-12; Day 3 Tr. at 31-33.

### *The Chapter 13 Proceedings*

27.   After Poholek filed Merritt's Chapter 13 petition, plaintiffs hired attorney David Baker to represent their interests in the bankruptcy proceedings.  Day 1 Tr. at 39-40.

---

[3] However, as Merritt's Chapter 13 reorganization plan made clear, these debts were disputed: "The debtor is taking out an adversary proceeding against the secured creditor PENSCO for violation of the usury laws and predatory lending.  The outcome of the adversary proceeding will determine the amount of debt owed on the secured claim."  Ex. 2 at 5; Day 3 Tr. at 31.

28.     Merritt's case was initially dismissed when she failed to provide evidence that her properties were insured.  Day 3 Tr. at 36; Ex. 12 at 3. Poholek had, before filing the petition, sought evidence of insurance from plaintiffs' counsel, but it was never provided.  Day 3 Tr. at 37.  Merritt obtained evidence of insurance on her own and filed an uncontested motion to vacate the order of dismissal.  *Id.*; Ex. 12 at 3.  The motion was allowed on July 5, 2018, and Merritt's Rule 341 meeting was rescheduled to August 14, 2018.  Ex. 12 at 4.

29.     Attempts to settle the Chapter 13 proceeding were frustrated after Cronan sent Tiernan an "incendiary letter" on June 28, 2018, intimating that his intention in engaging Poholek to file the Chapter 13 petition was to delay the foreclosure sale and give Merritt a "small window of opportunity to redeem" the Rehoboth Property.  Ex. 41; Day 2 Tr. at 107-108.

30.     Poholek was unaware of the letter until Baker informed him that it had been sent.  Day 2 Tr. at 109.

31.     On July 9, 2018, plaintiffs filed a motion for relief from stay.  Ex. 12 at 4.

32.     On July 18, 2018, Poholek – who was now aware of Cronan's letter – had not received Merritt's permission to either assent to or oppose

8

plaintiffs' motion.  Day 3 Tr. at 51-54.  As a result, Poholek filed a "Response" to the motion that neither admitted nor denied plaintiffs' allegation that Merritt's Chapter 13 plan was unviable.  Day 3 Tr. at 41; Ex. 12 at 6; Ex. 15.

33.   Shortly thereafter, Merritt directed Poholek to voluntarily dismiss the bankruptcy proceeding, and Poholek complied.  Day 3 Tr. at 41; Ex. 12 at 7.

34.   On August 7, 2018, the Bankruptcy Court allowed both plaintiffs' motion for relief from stay and Merritt's motion to dismiss the case.  Day 3 Tr. at 42; Ex. 12 at 7.

35.   As of August 7, 2018, Poholek's representation of Merritt ceased. Day 3 Tr. at 42.

36.   Thereafter, Cronan and Merritt – without Poholek's involvement – filed a Land Court action against plaintiffs, challenging the validity of the mortgage notes.  Day 1 Tr. at 57; Day 2 Tr. at 138-139; Exs. 16, 40.  The action was ultimately unsuccessful.  Ex. 16 at 9.

### *The Tax Taking*

37.   On September 6, 2017, the Rehoboth Property was seized by the Town of Rehoboth pursuant to a tax taking judgment entered by the Massachusetts Land Court.  Ex. 35.

38.     After Merritt filed her Chapter 13 petition, Baker informed Tiernan that the Town of Rehoboth owned the Rehoboth Property because of the tax taking.  Day 1 Tr. at 54; Day 3 Tr. at 78.

39.     Before filing Merritt's bankruptcy petition, Merritt told Poholek that the Rehoboth Property's real estate taxes had been paid.  Ex. 43; Day 2 Tr. at 50-52.

40.     Because the Town of Rehoboth owned the Rehoboth Property "outright in fee absolute," Ex. 14 at 7, plaintiffs did not have the legal authority to foreclose on the Rehoboth Property in May of 2018.  Day 1 Tr. at 54-55; Day 2 Tr. at 135-136; Day 3 Tr. at 79-80.

41.     On September 5, 2018, plaintiffs filed a motion to vacate the tax taking judgment in the Massachusetts Land Court.  Ex. 36.  The Land Court allowed the motion on September 11, 2018.  Ex. 37.

42.     On December 3, 2019, plaintiffs conducted a foreclosure auction of the Rehoboth Property, which sold for $550,000.  Day 1 Tr. at 45; Day 2 Tr. at 16.

43.     Plaintiffs have not foreclosed on the Norton Property.  Day 1 Tr. at 61; Day 2 Tr. at 30-31.

### *The Counterclaim*

44.   In 2019, Poholek was served with a Notice of Deposition in a Bristol County Superior Court case that Tiernan and Fagan had brought against Cronan and Merritt.  Day 2 Tr. at 83-84; Ex. 46.

45.   Poholek filed a motion to quash the deposition, explaining to the Superior Court that he had represented both Merritt and Cronan.  Day 2 Tr. at 84.

46.    The court granted Poholek's motion to quash, and Poholek was never required to give deposition testimony in the Bristol County case.  Day 2 Tr. at 88-89.

47.   On September 9, 2019, plaintiffs filed this lawsuit against Poholek in Bristol County Superior Court.  Not. of Removal (Dkt # 1) at 1. Poholek then removed the case to this federal court.  *Id.*

## RULINGS OF LAW

### *Abuse of Process*

1.   To establish an abuse of process claim, a plaintiff must show that "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage."  *Jones v. Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 389 (1975).

2.      The second prong – ulterior or illegitimate purpose – contemplates a purpose "for which [the process] was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010).

3.      "Mere knowledge that a claim is groundless is not sufficient in and of itself to establish an abuse of process." *Fafard Real Estate & Dev. Corp. v. Metro-Boston Broad., Inc.*, 345 F. Supp. 2d 147, 153 (D. Mass. 2004). "There must also be proof of an ulterior motive." *Ladd v. Polidoro*, 424 Mass. 196, 200 (1997).

**Mass. Gen. Laws ch. 93A, § 11**

4.      To succeed on a claim that a defendant violated Mass. Gen. Laws ch. 93A, § 11, a plaintiff must establish

> (1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by [Mass. Gen. Laws ch.] 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice.

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014).

*See* Mass. Gen. Laws ch. 93A, § 2 (a violation of Chapter 93A encompasses

"unfair or deceptive acts or practices in the conduct of any trade or commerce").

5.　　"An act or practice is 'unfair' if it is 'within at least the penumbra of some common-law, statutory or other established concept of unfairness,' is 'immoral, unethical, oppressive, or unscrupulous,' and 'causes substantial injury to consumers (or competitors or other businessmen).'" *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184 (1st Cir. 2009), quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005).  The "crucial factors" in an unfairness inquiry are "the nature of [the] challenged conduct and . . . the purpose and effect of that conduct." *Mass. Employers Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 42 (1995).

6.　　"An act or practice is 'deceptive' if it has the 'capacity or tendency' to deceive." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d at 185, quoting *Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*, 986 F.2d 605, 605 (1st Cir. 1993).

## ULTIMATE FINDINGS OF FACT AND RULINGS OF LAW

### *Abuse of Process*

1.　　Although Poholek, by his own admission, made numerous errors in his filing of Merritt's Chapter 13 petition and in his conduct of Merritt's

bankruptcy proceedings, he did not abuse the bankruptcy process.  As the court remarked at trial, "process done badly is not abuse of process."  Day 3 Tr. at 59.

2.      Plaintiffs did not demonstrate, by a preponderance of the evidence, that Poholek had any "ulterior motive" in filing the Chapter 13 petition on Merritt's behalf.  *Ladd*, 424 Mass. at 200.  Although there is some evidence that *Cronan* may have intended to use the Chapter 13 process to delay the scheduled foreclosure, plaintiffs did not present any credible evidence that Cronan or Merritt ever informed *Poholek* that their motive in filing the petition was to prevent the foreclosure from going forward. Plaintiffs' bankruptcy attorney, David Baker, testified that Poholek had no knowledge that Cronan had written Tiernan a letter outlining his true intentions until after Baker brought it to Poholek's attention.  Findings of Fact (FF) ¶ 30.[4]

---

[4] The court does not credit Baker's self-serving (and contested) testimony that Poholek allegedly confessed to him in a telephone conversation that he had filed the petition for the sole purpose of stalling, hindering, and delaying the foreclosure. *See* Day 2 Tr. 101-102, 119-120. The court rather credits Poholek's testimony in this regard. *See* Day 3 Tr. at 38-39 ("Q: Did you admit to Mr. Baker that the bankruptcy case had been filed to, quote, 'simply stall, hinder, or delay the foreclosure?'  A: No.").

3.     Rather, the evidence shows that Cronan came to Poholek three days before the Rehoboth Property was set for foreclosure to ask for help on Merritt's behalf.  FF ¶ 9.  Upon an initial review of the loan documents and of the information provided by Cronan and Merritt, Poholek concluded that the notes were likely usury in nature.  FF ¶ 13.  Thus, he advised Merritt to file a Chapter 13 petition to protect her equity in the Rehoboth Property and challenge what he then believed to be predatory lending practices on plaintiffs' part.  FF ¶ 18.  Poholek worked quickly to file Merritt's petition and compose her bankruptcy schedules and reorganization plan.  FF ¶¶ 24-25. In so doing, Poholek and his paralegal, Rebecca Prizio, cut corners and made careless errors.  FF ¶ 26.  However, carelessness, without any further evidence of bad faith on Poholek's part, cannot establish a claim for abuse of process.[5]

---

[5] The court declines plaintiffs' request to apply the "missing witness" rule and draw inferences against Poholek because Merritt did not appear to testify in this case.  At the outset, the court notes that the "missing witness" rule generally applies as an instruction to the jury at the close of a jury trial, not as a standalone evidentiary rule in a bench trial.  *See*, *e.g.*, *United States v. Sandoval*, 6 F.4th 63, 102 (1st Cir. 2021).  In any event, the court has no reason to believe that Merritt "would have given testimony unfavorable to" Poholek such that inferences relating to Poholek's representation of Merritt should be drawn against him.  *Commonwealth v. Anderson*, 411 Mass. 279, 280 n.1 (1991).  Nor does the court have any reason to believe that Merritt was not equally available to both sides as a witness. *See Commonwealth v. Williams*, 450 Mass. 894, 900 (2008).

4.      Further, given that plaintiffs had failed to discover that they did not own the Rehoboth Property before the initial foreclosure was to take place, and did not move to vacate the Town of Rehoboth's tax taking judgment until after Merritt's Chapter 13 proceedings had concluded, the court rejects plaintiffs' argument that the automatic stay resulting from Poholek's filing of the Chapter 13 petition caused them any substantial harm. FF ¶¶ 37-41.

5.      Consequently, the court will deny plaintiffs' abuse of process claim.

## *Mass Gen. Laws ch. 93A, § 11*

6.      Similarly, plaintiffs have not shown, by a preponderance of the evidence, that Poholek committed any unfair or deceptive acts or business practices.  As discussed above, Poholek did not intend to file a groundless lawsuit – by initiating Merritt's Chapter 13 proceedings – for the purpose of delaying plaintiffs' foreclosure of the Rehoboth Property.

7.      Further, although Poholek clearly made mistakes in filing the Chapter 13 petition, there is no evidence that any of these errors were made with the purpose of deceiving plaintiffs or the Bankruptcy Court.  Moreover, as Merritt's petition was voluntarily dismissed before the Rule 341 Meeting could be held, *see* FF ¶¶ 33-34, plaintiffs cannot demonstrate that any

allegedly deceptive statements made in Merritt's Chapter 13 filings bore a "causal connection" to any "loss [they] suffered." *Auto Flat Car Crushers, Inc.*, 469 Mass. at 820.[6]

8.     The court will thus dismiss plaintiffs' Chapter 93A claim.

### *Abuse of Process Counterclaim*

9.     Finally, plaintiffs did not abuse the litigation process by filing this lawsuit against Poholek for refusing to testify in another state court matter.  Aside from the chronological reality that plaintiffs filed this lawsuit after Poholek successfully moved to quash his deposition in plaintiffs' Bristol County litigation against Merritt and Cronan, *see* FF ¶ 44-47, Poholek provides no evidence to support his claim that plaintiffs filed this lawsuit as retribution for his unwillingness to testify against Merritt or Cronan.

10.     Accordingly, the court will dismiss Poholek's abuse of process counterclaim.

---

[6] The issue of whether Merritt was a full-time resident of Massachusetts or Mexico at the time of the Chapter 13 filing, although fiercely contested by both sides, is ultimately irrelevant.  There is no evidence to support plaintiffs' theory that Poholek knowingly lied about Merritt's residency or willfully concealed the fact that she was living temporarily in Mexico.  In any event, Merritt had the legal right to file a Chapter 13 petition in Massachusetts regardless of her residency because she owned properties in Massachusetts.  Day 3 Tr. at 23-24.

**ORDER**

The Clerk will enter judgment consistent with the court's findings and rulings and close the case.   No costs are awarded to either side.

SO ORDERED.

/s/Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE